J-A13016-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ESTATE OF: HERMAN T. HYMOWITZ, DECEASED | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: NANCY MARCUS NEWMAN  AND JULIA MARCUS PAUL | : : : : : : | |
| | : | No. 2004 EDA 2020 |

Appeal from the Decree Entered September 9, 2020
In the Court of Common Pleas of Montgomery County Orphans' Court at
No(s):  No. 2001-X0135

BEFORE:   BENDER, P.J.E., DUBOW, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY DUBOW, J.:                        Filed: August 12, 2021

Appellants, Nancy Marcus Newman and Julia Marcus Paul, appeal from the September 9, 2020 Order denying, with prejudice, the relief sought by Appellants in this declaratory judgment action.   After careful review, we affirm.

The relevant facts and procedural history are as follows.  Appellants are the granddaughters of Herman T. Hymowitz ("Herman").  Herman and his brother, Edward M. Hymowitz ("Edward"), were partners in a partnership known as The Great Atlas Company ("Great Atlas").

On November 20, 1989, Herman executed a will ("Will"), naming Hannah Hymowitz ("Hannah")[1] and Stephen L. Hymowitz ("Stephen"),

_____

[*] Former Justice specially assigned to the Superior Court.

[1] Hannah Hymowitz died on October 1, 2009.

Herman's wife and son, respectively, co-executors of Herman's estate. The Will made numerous specific bequests and contained a provision placing the remainder of Herman's estate in a trust ("Trust") for the benefit of Appellants with Hannah and Stephen as named co-trustees.

From 1939 to 1996, Herman and Edward owned Great Atlas. Edward died in 1996, at which time his interest in Great Atlas passed to his daughters, Mona Schwartz and Susan Bekun ("Mona" and "Susan").[2]

On September 10, 1996, Mona and Susan, along with Stephen, executed an amended partnership agreement, which reflected the individuals who then owned interests in Great Atlas. The partnership agreement clearly and unambiguously provided, *inter alia*, that, at that time, Stephen owned Herman's one-half interest in the partnership:

> WHEREAS, STEPHEN L. HYMOWITZ has succeeded to the entire remaining one-half ownership of Herman T. Hymowitz in the partnership, []
>
> ***
>
> The partnership name shall be STEPHEN L. HYMOWITZ, MONA H. SCHWARTZ and SUSAN E. BERKUN trading as STEPHEN L. HYMOWITZ, MONA H. SCHWARTZ and SUSAN E. BERKUN, co-partners[.]
>
> ***
>
> The net profits of the Partnership shall be shared, and the losses of the partnership shall be borne by the Partners, pro rata, in proportion to their respective Partnership interest - STEPHEN L. HYMOWITZ fifty percent, MONA H. SCHWARTZ twenty-five percent and SUSAN E. BERKUN twenty-five percent.

---

[2] Appellants' mother, Seena Hymowitz Marcus, died in 1982 and was the sister of Herman.

Amended Partnership Agreement, 9/10/96, at 1-3. Thus, as of September 10, 1996, it was Stephen, and not Herman, who owned Herman's one-half interest in Great Atlas.

A year later, on June 13, 1997, the partners confirmed that Stephen, and not Herman, was one of the owners of Great Atlas when Mona, Susan, and Stephen amended the Fictitious Name Registration that had originally been filed by Herman and Edward on January 21, 1939, by adding Mona, Susan, and Stephen as owners of Great Atlas.

Herman died on November 2, 2000. On January 12, 2001, Stephen and Hannah filed a Petition for Probate and offered Herman's Will to probate. Relevant to the instant appeal, on December 14, 2001, Stephen filed an estate inventory, which, because Herman had transferred his interest in Great Atlas to Stephen in 1996, necessarily did not list Herman's interest in Great Atlas as an asset of the estate.

In 2010, Appellants executed a trust settlement agreement ("Settlement") with Herman's estate in which they agreed to accept cash distributions of $200,000 each in full satisfaction of their interest in the Trust.[3] In signing the Settlement, Appellants agreed: (1) to discharge the co-trustees against all liability, loss, or expense as a result of the distribution; and (2)

_____

[3] The Settlement named four Trust beneficiaries: Appellants, Jordan N. Hymowitz, and Craig L. Hymowitz. At the time of the Settlement, the Trust contained insufficient assets to distribute the full $200,000 to each beneficiary; instead, pursuant to the Settlement, each beneficiary received $99,868.11.

that the Settlement would have full force as if adjudicated and confirmed by the orphans' court.

On June 23, 2020, Appellants filed a Petition for Declaratory Judgment. In the Petition, Appellants asserted that they had only learned of the existence of Great Atlas in August 2019. Petition, 6/23/20, at ¶ 18. They further asserted that, because they had "never seen any documents evidencing the transfer of Herman's interest to [Stephen], either by succession, by gift, or by sale," they speculated that Herman had not validly transferred his ownership interest in Great Atlas to Stephen in 1996.[4] *Id.* at 17. Relying solely on this assumption, Appellants concluded that, pursuant to Paragraph Six of Herman's will, at Herman's death his Great Atlas partnership interest poured over into the Trust created in the Will for the benefit of Appellants. Appellants did not append any documentary evidence to their Petition demonstrating that Herman owned his interest in Great Atlas at the time of his death. Nevertheless, based purely on their speculation that he did own such an interest at that time, they sought a declaration from the court that they had a current right to Herman's fifty percent interest in Great Atlas.

_____

[4] Appellants assertion that they had never seen documents evidencing the transfer of Herman's interest in Great Atlas to Stephen is belied by the fact that they included as "Exhibit B" to their Petition a copy of the June 13, 1997 Amended Fictitious Name Registration for and as "Exhibit C" a copy of the September 10, 1996 Partnership Agreement listing Stephen, Mona, and Susan as Great Atlas partners and indicating that Stephen "ha[d] succeeded to the entire remaining one-half ownership interest of Herman [] in the partnership[.]" *See* Petition at Ex. C (Partnership Agreement at 1).

Stephen did not file a Response to the Petition on behalf of Herman's estate. On September 9, 2020, the orphans' court denied with Petition with prejudice finding that: (1) Appellants lacked standing to bring an action against Herman's estate; and (2) by agreeing to the Settlement, Appellants had released Stephen and Hannah from liability, stipulated that the Settlement had the full force of law as if adjudicated by the orphans' court, and given up the right to bring further accounting proceedings pertaining to the Trust. Order, 9/9/20.

This timely appeal followed. Both Appellants and the orphans' court have complied with Pa.R.A.P. 1925.

Appellants raise the following issues on appeal:

1. Did the [l]ower [c]ourt err in entering an Order and Decree that denied "with prejudice" Appellants' Petition, where the Petition was yet to be answered by Respondent Stephen L. Hymowitz [], it alleged issues of fact, which[,] if proven, would have rendered void[] and unenforceable the "settlement" under a Trust Agreement referenced and relied upon by the [l]ower [c]ourt in the Final Decree ("Settlement"); and if the Order and Decree had not been entered "with prejudice[,]" Appellants would have amended the [P]etition to clarify certain areas where the [l]ower [c]ourt misread or misunderstood the import of the Petition[?]

2. Did the [l]ower [c]ourt err in issuing an Order without evidence or even a complete set of pleadings, even though Appellants alleged in their unanswered Petition that their grandfather created a Trust for their benefit that their grandfather appointed [Stephen] as the Trustee for the Trust, but despite his fiduciary duties, [Stephen] cheated Appellants and fraudulently induced them into accepting the Settlement by withholding material facts that, if disclosed, would have revealed that the Settlement was neither fair, adequate, or legal, and further, that [Stephen], despite being the fiduciary

to Appellants, engaged in self-dealing, and otherwise breached the fiduciary duty [Stephen] owed to Appellants?

3. Did the [l]ower [c]ourt err in concluding Appellants lacked standing where it was alleged that Appellants are beneficiaries under [Herman's] Trust, and that the Trust was a direct beneficiary of [Herman's] Will?

4. Did the [l]ower [c]ourt err in ruling Appellants agreed to accept the Settlement when Appellants alleged the following uncontradicted facts: (a) the Trust Instrument provided by [Stephen] was never attached nor seen by Appellants when the Trust Agreement was signed; (b) when presented with the Trust Agreement, it was never disclosed to Appellants that there existed an extremely valuable partnership asset which is material information that would have influenced Appellants' decision to sign the Trust Agreement; and (c) Appellants['] request for the Trust Agreement was completely denied improperly[?]

Appellants' Brief at 5-6 (some formatting omitted).

In their first issue, Appellants claim that the lower court erred in denying their Petition for declaratory judgment "with prejudice" on the basis of issues the court raised *sua sponte*, *i.e.*, that Appellants were bound by the Settlement. Appellants' Brief at 23-24. They further assert that the court erred in denying the Petition without permitting Appellants an opportunity to amend the Petition because they raised issues that, if proven, would have rendered the Settlement unenforceable. *Id.* at 24-25.

Our standard of review is well-settled: "[W]e will not reverse an Orphans' Court's decision unless there has been an abuse of discretion or a fundamental error in applying the correct principles of law." *In re Estate of Hoffman*, 54 A.3d 903, 905 n.1 (Pa. Super. 2012).

"Declaratory judgments are nothing more than judicial searchlights, switched on at the behest of a litigant to illuminate an existing legal right, status[,] or other relation." **Wagner v. Apollo Gas Co.**, 582 A.2d 364, 365 (Pa. Super. 1990) (internal quotation marks omitted). "In order to sustain an action under the Declaratory Act, a plaintiff must demonstrate an 'actual controversy' indicating imminent and inevitable litigation, and a direct, substantial[,] and present interest." **Id.** at 366. "Our standard of review in a declaratory judgment action is limited to determining whether the trial court clearly abused its discretion or committed an error of law." **Erie Ins. Grp. v. Catania**, 95 A.3d 320, 322 (Pa. Super. 2014) (citation omitted).

Instantly, Appellants sought a declaration that they had an existing legal right to Herman's interest in Great Atlas. Without addressing the merits of Appellants' claim that Herman owned an interest in Great Atlas at the time of his death to which Appellants had a right as beneficiaries under the Trust, the orphans' court determined that Appellants' decision to enter into the Settlement with the Trust in exchange for a cash payment had extinguished any possible interest they may have had in Great Atlas. The court, therefore, denied Appellants relief.

Following our review, we agree with the orphans' court that Appellants were not entitled to the relief they sought, albeit for a different reason.[5] We conclude that the Record belies Appellants' bald speculation that Herman

---

[5] An appellate court may affirm on any proper grounds appearing as of record. **Gbur v. Golio**, 963 A.2d 443, 452 (Pa. 2009) (internal citation omitted).

owned any interest in Great Atlas at the time of his death. Rather, the Record reveals that, as of September 10, 1996, when Stephen, Mona, and Susan executed the partnership agreement, Stephen owned Herman's entire interest in Great Atlas. *See* Partnership Agreement at 1-3. There is no evidence that Stephen ever transferred his interest in Great Atlas back to Herman. Thus, when Herman died in 2000, Herman did not own any interest in Great Atlas and, as such, the interest was not part of his estate. Since the partnership interest was not part of Herman's estate, it could not have poured over to the Trust for which Appellants were the beneficiaries. Appellants, therefore, never had any "existing legal right" to or "present interest" in Herman's share of in Great Atlas. Accordingly, the trial court properly denied Appellants' Petition for Declaratory Relief.

In light of this determination, Appellants' related argument that the orphans' court erred in denying their Petition without first permitting them to amend their claims pertaining to the enforceability of the Settlement to include additional facts, *see* Appellants' Brief at 24, likewise fails. Moreover, Appellants have not included in their Brief a recitation of the facts they intended to include in an amended petition that would have demonstrated that they had an "existing legal right" to the relief they sought. Appellants are, therefore, not entitled to relief on their first claim.

In their second issue, Appellants claim the trial court erred finding that Appellants did not establish a right to relief where they pleaded that Stephen had breached his fiduciary duty to them, cheated them out of their share of

Great Atlas, and fraudulently induced Appellants into entering into the Settlement. Appellants' Brief at 25-27. Because we have concluded that Herman did not own any interest in Great Atlas at the time of his death, and, therefore, that Appellants were not entitled to any share of Great Atlas, Stephen could not have breached his fiduciary duty to Appellants or fraudulently induced them into relinquishing their interest in the partnership. This claim, therefore, fails.

In their third issue, Appellants assert that the orphans' court erred in finding that Appellants lacked standing to bring their claims because they were not beneficiaries under Herman's Will. Appellants' Brief at 28-29. They argue in support of this claim that standing is an issue that should have been raised by Appellee in a response to Appellants' Petition and not by the orphans' court *sua sponte*. **Id.**

Our review of the orphans' court's Order denying Appellants' Petition for declaratory relief indicates that the orphans' court did not deny the Petition on the basis of Appellants' purported lack of standing to bring their claims.[6] Rather, after noting that Appellants' lacked standing, the court made the substantive determination that Appellants were bound by the terms of the Settlement, which released Stephen and Hannah from liability and imbued the

_____

[6] It bears noting that Appellants did not argue in their Brief that the court's finding that they lacked standing to bring their claims was the basis for its dismissal of Appellants' Petition and that they were, therefore, aggrieved by this finding. They merely argue that the orphans' court erred in raising this issue *sua sponte*.

Settlement with "full force as if adjudicated and confirmed by [the orphans' c]ourt. Order, 9/9/20, at 1. Thus, Appellants have failed to demonstrate that the orphans' court's "finding" that Appellants' lacked standing was dispositive of their claims or aggrieved them in any way.

In their final issue, Appellants assert that the orphans' court erred in determining, *sua sponte*, that Appellants agreed to accept the Settlement because Appellants "alleged numerous facts that were uncontradicted," which, if proven, would have demonstrated that the Settlement was invalid. Appellants' Brief at 28-29. In light of our holding, *supra*, that it was Appellants' failure to demonstrate that they had a right to the interest in Great Atlas formerly owned by Herman—and not the validity or applicability of the Settlement—that was fatal to Appellants' claims, they are not entitled to relief on this claim.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/12/21